UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

JEREMY WILLIAM DEAN,

                Defendant.

Criminal case no. 11-cr-20195

HON. LINDA V. PARKER
United States District Judge

---

## UNITED STATES' RESPONSE OPPOSING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

---

Jeremy Dean was sentenced to 151 months in prison because he is a repeat drug dealer with a lengthy criminal record. Indeed, this is Dean's second stint with the Bureau of Prisons, in both instances he was caught with kilograms of controlled substances. Dean nonetheless moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of COVID-19 and an underlying medical condition of sleep apnea. His motion should be denied.

Dean does not qualify for compassionate release. For starters, Dean has not satisfied the mandatory exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) because he is not seeking compassionate release from this Court on the same factual basis as his request to the warden of his prison; the Court is therefore barred from addressing his argument on the merits. *See United States v. Alam*, ___ F.3d

___, No. 20-1298, 2020 WL 2845694 (6th Cir. June 2, 2020); *United States v. Asmar*, No. 18-20668, 2020 WL 3163056, at *3, (E.D. Mich. June 5, 2020).

Dean also does not satisfy the substantive requirements for compassionate release. First, Dean has not demonstrated that he has a condition that places him at higher risk for serious illness from COVID-19. See § 1B1.13(1)(A) & cmt. n.1. Second, Dean's offense and criminal history make him a danger to the community, which precludes release under USSG § 1B1.13(2). And third, the § 3553(a) factors—which the Court must consider under § 3582(c)(1)(A)—likewise do not support release.

Finally, the Bureau of Prisons has assessed its entire population to determine which inmates face the most risk from COVID-19, pose the least danger to public safety, and can safely be granted home confinement. Given the efforts of the Bureau of Prisons (BOP), and "the legitimate concerns about public safety" from releasing inmates who might "return to their criminal activities," *Wilson v. Williams*, ___ F.3d ___, No. 20-3447, 2020 WL 3056217, at *11 (6th Cir. June 9, 2020), the Court should deny Dean's motion for compassionate release.

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 2

## Background

In March of 2011, the Michigan State Police conducted a controlled delivery of nearly 100 kilograms of marijuana to Dean, valued at over $100,000. (PSR ¶ 10-11). Dean's accomplice, who had been arrested earlier with the marijuana, agreed to participate in the controlled delivery. (Id.). The accomplice took the marijuana to Dean's residence where he and Dean transferred the drugs from the accomplice's vehicle to Dean's pickup truck. (Id.). Shortly thereafter, Dean entered the truck with the marijuana and drove off. (Id.). Police followed Dean, arrested him, and retrieved the marijuana. (Id.).

This was not Dean's first foray into large-scale drug distribution. In 2000, Dean was sentenced to 5 years in the BOP for conspiracy to possess with intent to distribute marijuana. (PSR ¶ 37). Dean was involved in a conspiracy to transport drugs from Texas to Atlanta, GA. (Id.). Dean was held accountable for over 170 kilograms of marijuana. (Id.).

Shortly before the 2000 drug conspiracy Dean involved himself in local drug distribution. Flint police officers apprehended Dean with multiple baggies of marijuana, cocaine, and over $1,100 in cash. (PSR ¶ 36). Dean was convicted of drug distribution in state court. (Id.).

In addition to these drug offenses, Dean has two other felonies and several misdemeanor convictions. (PSR ¶¶ 28-38).

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 3

On his current offense, Dean was sentenced to 151 months' imprisonment on May 2, 2012, and is incarcerated at FCI Elkton. He is 48 years old, and his projected release date is April 2, 2021. His only asserted underlying medical condition is sleep apnea. Dean has moved for compassionate release, citing this medical condition and the COVID-19 pandemic.

## Argument

### I.    This Court should deny Dean's motion for compassionate release.

Dean's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow. For several reasons Dean has not satisfied the requirements for compassionate release.

First, compassionate release requires not only exhaustion, but exhaustion on the same factual basis that was requested of the warden. *Alam*, 2020 WL 2845694, at *1–*4; *Asmar*, 2020 WL 3163056, at *3.

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 4

Second, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A). To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in U.S.S.G. § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

Third, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

Dean does not meet any of the above-outlined qualifications. He has not appropriated exhausted his administrative remedies, his medical condition is not extraordinary and compelling, he is a dangerous offender, and the 3553(a) factors do not support release.

A.   The Court is barred from granting release because Dean has not satisfied the statutory exhaustion requirement.

The Court must dismiss Dean's motion because he has not satisfied the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A). A defendant-initiated motion for compassionate release includes an exhaustion requirement. Id. More specifically, a district court may not grant a defendant's motion for compassionate release unless the defendant files it "after"

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 5

the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *Alam*, 2020 WL 2845694, at *2. As the Sixth Circuit recently held in *Alam*, this statutory exhaustion requirement is "a mandatory condition" that "must be enforced" when the government raises it. *Id.* at *1–*4; *accord United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020).

Section 3582(c)(1)(A) also means that an inmate may not move for compassionate release on a different ground than the one he raised during the administrative process. The entire point of § 3582(c)(1)(A)'s exhaustion requirement is to ensure that the Bureau of Prisons has the opportunity to evaluate and consider an inmate's request first, while allowing the inmate to seek relief in court if the Bureau of Prisons denies or fails to act upon the request. *Alam*, 2020 WL 2845694, at *4. So when "the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement because he does not give the BOP an opportunity to act on the request before [he] brings his request to the courts." *Asmar*, 2020 WL 3163056, at *3; *accord United States v. Mogavero*, No. 15-00074, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 6

present the same factual basis for the compassionate-release request to the

warden."). Thus, an inmate seeking relief based on a danger of more severe illness

from COVID-19 due to an underlying medical condition must first make *that*

request to the Bureau of Prisons before seeking relief in court. *See Alam*, 2020 WL

2845694, at *4 (emphasizing the claim-specific nature of exhaustion).

Here, on April 6, 2020, Dean requested that the Warden grant him

compassionate release. (Exhibit 1). However, Dean's request to the Warden was

solely based on the existence of COVID-19 in prison. (Id.). Unlike his current

motion before this Court, Dean did not rely on *any* medical condition, let alone

sleep apnea, as a basis for the Warden to grant him compassionate release. (Id.).

Indeed, the Warden's denial of Dean's request did not take into consideration

Dean's sleep apnea—because Dean did not raise that, or any other medical

condition, with the Warden. (Exhibit 2). In other words, the factual basis in the

administrative request and the factual basis in the motion before this Court are

different. Under these circumstances, Dean has not satisfied the exhaustion

requirement of § 3582(c)(1)(A). Courts facing nearly identical circumstances have

arrived at this same conclusion.

In *Asmar*, the court acknowledged that the defendant submitted an

administrative request to the warden, which was denied. *Asmar* at *3. However,

like Dean, Asmar's "administrative request did not reference any of his health

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 7

conditions he raises as a basis for compassionate release before this court." *Id.* The court explained that "[b]y requiring a defendant to exhaust, § 3582(c)(1)(A) gives the BOP the opportunity to gather an inmate's medical documentation and other records, evaluate the request, and decide in the first instances whether it justifies seeking compassionate release or pursuing some other form of relief." *Id.* Under the same circumstance as presented here, that court dismissed Asmar's motion without prejudice.

Similarly, in *United States v. Valdes*, No. 15CR2822-CAB, 2020 WL 3402255, at *2 (S.D. Cal. June 19, 2020), the defendant made no mention of his personal medical history as a compelling reason for his request to the warden for transfer to home confinement. Like Dean, Valdes simply expressed concern about remaining in custody where he could have an increased risk of exposure to COVID-19. Valdes made no mention of any personal risk factors for medical complications should he contract the virus while in custody. On the other hand, his motion to the court included personal risk factors if he were to contract COVID-19. Because he did not seek compassionate release from the court on the same factual basis as his request to the warden, the court denied Valdes motion without prejudice. *Id.*

Finally, in *United States v. Chappell*, No. 16-CR-512-LTS, 2020 WL 3415229, at *3 (S.D.N.Y. June 22, 2020), the defendant sought compassionate

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 8

release from the warden based on the general risk of death posed by the coronavirus. *Id.* The defendant's request to the warden did not mention his underlying medical conditions such as immunocompromising psoriasis treatment, obesity, or age-related concerns in light of the pandemic. *Id.* The court explained that "it is the defendant's responsibility to, at a minimum, present to the warden [t]he extraordinary or compelling circumstances that the inmate believes warrant consideration. 28 C.F.R. § 571.61." *Id.* (internal quotations omitted). The court concluded that "Mr. Chappell did not raise in his Application, and the BOP was not asked to consider, his immunocompromising therapies, obesity, and age-related health concerns in the context of the COVID-19 pandemic. Accordingly, the Defendant has not satisfied the prerequisite contemplated by Section 3582(c)(1)(A) for bringing his compassionate release motion before this Court."

Like these other defendants, Dean did not present to the Warden any medical condition, including his sleep apnea, which would place him at a higher risk of serious complications from COVID-19. In other words, the BOP was not put on notice of, and thus did not have an opportunity to consider, Dean's belief that he should be released in light of COVID-19 vis-à-vis his medical condition. Under these circumstances, Dean did not comply with § 3582(c)(1)(A)'s mandatory exhaustion requirement. Accordingly, Dean's motion for compassionate release should be dismissed without prejudice. *Alam*, 2020 WL 2845694, at *5.

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 9

B.      Dean is not eligible for compassionate release under the criteria
        in U.S.S.G. § 1B1.13.

Even if Dean had appropriately exhausted his administrative remedies,

compassionate release would be improper. Compassionate release must be

"consistent with applicable policy statements issued by the Sentencing

Commission." 18 U.S.C. § 3582(c)(1)(A). Because the Sentencing Commission

has fulfilled Congress's directive in U.S.S.G. § 1B1.13, that policy statement is

mandatory. *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014); *accord

Dillon v. United States*, 560 U.S. 817, 830 (2010).

Section 1B1.13 cabins compassionate release to a narrow group of non-

dangerous defendants who are most in need. That policy statement limits

"extraordinary and compelling reasons" to four categories: (1) the inmate's

medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and

(4) other reasons "[a]s determined by the Director of the Bureau of Prisons".

USSG § 1B1.13 cmt. n.1. As the Tenth Circuit explained, a district court "lack[s]

jurisdiction" to grant compassionate release when a defendant's circumstances do

not fall within those categories. *United States v. Saldana*, No. 19-7057, 2020 WL

1486892, at *3 (10th Cir. Mar. 26, 2020).

The COVID-19 pandemic does not, by itself, qualify as the type of inmate-

specific condition permitting compassionate release. *See United States v. Bolze*,

No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at *7 (E.D. Tenn. May 13,

2020) ("the COVID-19 pandemic cannot present an extraordinary and compelling reason alone because the policy statement directs courts to consider individual reasons for compassionate release, not general threats to the prison population."). The Bureau of Prisons has worked diligently to implement precautionary measures reducing the risk from COVID-19 to Dean and other inmates. *See Wilson*, 2020 WL 3056217, at *2, *8.

Dean also relies on his medical condition of sleep apnea in support of his claim for compassionate release. But Dean's medical condition does not satisfy the requirements for release in U.S.S.G. § 1B1.13 cmt. n.1, even when considered in combination with COVID-19.

To meet the criteria for compassionate release based on his medical condition, Dean must show that his condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, application note 1. Dean's condition does not satisfy this criteria.

Dean does not state, much less provide evidence, that his condition prevents him from providing self-care within his correctional facility. Rather, Dean's medical history shows that his condition is being appropriately monitored by medical personnel and neither the medical records nor Dean mention that his condition is preventing him from being from being able to provide self-care.

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 11

Further, COVID-19 does not change this analysis. Contrary to Dean's assertion, the CDC has not identified sleep apnea as an underlying medical condition that increases risk for severe illness due to the virus, or even might increase the risk for severe illness. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Further, courts that have considered sleep apnea as a basis for compassionate release in the context of COVID-19 have concluded that it does not qualify. *United States v. James*, No. 15-CR-00255 (SRN), 2020 WL 3567835, at *4 (D. Minn. July 1, 2020) ("While it appears that he suffers from significant mental health disorders and certain physical ailments such as a Vitamin B-12 deficiency and sleep apnea, none of these conditions have been identified by the Centers for Disease Control and Prevention ("CDC") as specifically increasing the risk of developing serious illness from COVID-19."); *United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *6 (D. Kan. Apr. 9, 2020) ("The court finds that Mr. Dawson has not established that his sleep apnea puts him at an increased risk for severe illness were he to contract COVID-19.").

So whether considered alone or in combination with the COVID-19 pandemic, Dean's medical condition does not satisfy the initial eligibility criteria for release under U.S.S.G. § 1B1.13 cmt. n.; *see United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5–*6 (E.D. Mich. May 15, 2020).

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 12

Even if this Court were to consider Dean to have an elevated risk of developing more severe symptoms of COVID-19 due to his sleep apnea, that generalized risk of contracting COVID-19 and potentially developing more severe symptoms is not akin to the type of "extraordinary and compelling reasons" justifying compassionate release identified by the Sentencing Commission. *See United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020). In light of his age and access to medical treatment, sleep apnea does not fall in the category of illnesses that presents "extraordinary and compelling reasons" to warrant a sentence reduction, even considering COVID-19.

Finally, even if the combination of Dean's medical condition and the COVID-19 pandemic satisfied the initial criteria for eligibility in U.S.S.G. § 1B1.13 cmt. n.1, Dean would remain ineligible for compassionate release because he is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." It thus prohibits the release of violent offenders, including most drug dealers. *See United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010) (noting that the court "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence"); *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020). An evaluation

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 13

of dangerousness under § 3142(g) requires a comprehensive view of community safety—"a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam).

Dean remains a danger to the community. Dean was designated a career offender under the sentencing guidelines because of his repeated drug dealing, a dangerous activity that is harmful and damaging to the community. Moreover, Dean was not just a neighborhood street dealer; rather, he involved himself in large scale drug trafficking, which compounds the dangerous and deleterious effects Dean had on the community. Further, a review of Dean's lengthy criminal record reveals that he has been unable to remain crime free for any sustained period of time. (PSR ¶ 28-38).

Adhering to § 1B1.13(2) is especially important given the current strain on society's first responders and the rise in certain types of crime during the Pandemic. Police departments in many cities have been stretched to their limits as officers have either contracted COVID-19 or been placed in quarantine. Some cities, including Detroit, have seen spikes in shootings and murders. There are real risks to public safety right now, and those risks will only increase if our community is faced with a sudden influx of convicted defendants.

In short, Dean is not eligible for compassionate release.

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 14

C.     The factors in 18 U.S.C. § 3553(a) weigh against
       compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons"

and demonstrated that he is not dangerous, he is still not entitled to compassionate

release. Before ordering relief, the Court must consider the factors set forth in 18

U.S.C. § 3553(a) and determine that release is appropriate. *See Knight*, 2020 WL

3055987, at *3 ("The § 3553(a) factors . . . weigh against his request for

compassionate release."); *United States v. Austin*, No. 15-20609, 2020 WL

2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's

circumstances do not warrant compassionate release . . . under 18 U.S.C. §

3553(a)"); *Murphy*, 2020 WL 2507619, at *6 (denying compassionate release

because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see

also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020)

(upholding a district court's denial of compassionate release based on the

§ 3553(a) factors). So even if the Court were to find Dean eligible for

compassionate release, the § 3553(a) factors should still disqualify him.

As mentioned, the nature and circumstances of the offense involve the

defendant possessing with intent to distribute nearly 100 kilograms of marijuana

valued at over $100,000. Importantly, prior court intervention and prior prison

sentences have not deterred Dean from reoffending. This is now his third prison

sentence. (PSR ¶¶ 33, 37). Indeed, Dean was discharged from supervised release in

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 15

2009 for his drug conspiracy conviction after serving a federal sentence only to

turn around 18 months later and get caught with nearly 100 kilograms of

marijuana. (PSR ¶ 83). Despite his assertions that he is on the straight and narrow,

Dean's pattern of criminal conduct suggests that his criminal activity will not end

here. Undoubtedly, Dean has struggled to remain crime-free, his convictions

include:

- 1990: attempt breaking and entering
- 1995: driving while impaired
- 1995: open intoxicants
- 1995: operating under the influence
- 1996: possession of marijuana
- 1996: unlawful driving away a motor vehicle; attempt resisting and obstructing
- 1998: driving while impaired
- 1998: attempt contributing to delinquency of minor
- 1999: possession of controlled substance less than 25 grams; delivery of marijuana
- 1999: conspiracy to possess with intent to distribute marijuana; possession with intent to distribute marijuana
- 2008: accosting and soliciting (dismissed after delayed sentence)
- 2011: possession with intent to distribute marijuana (current case).

(PSR ¶¶ 28-38). In other words, a sentence reduction would frustrate the basic aims

of sentencing such as promoting respect for the law, providing just punishment,

affording adequate deterrence, and most importantly protection of the community.

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 16

## II.    The Bureau of Prisons has responded to COVID-19 by protecting inmates and increasing home confinement.

### A.    The Bureau of Prisons' precautions have mitigated the risk from COVID-19 within its facilities.

The Bureau of Prisons has reacted quickly to confront COVID-19's spread within its facilities. *Wilson*, 2020 WL 3056217, at *2. For over almost a decade, the Bureau of Prisons has maintained a detailed protocol for responding to a pandemic. Consistent with that protocol, the Bureau of Prisons began planning for COVID-19 in January 2020. *Id.* Since then, the Bureau of Prisons has implemented "a phased approach nationwide," implementing an increasingly strict protocol to minimize the virus's spread in its facilities. *Id.*

On March 13, 2020, the Bureau of Prisons began modifying its operations to implement its COVID-19 Action Plan and minimize the risk of COVID-19 transmission into and inside its facilities. *Id.*; *see* BOP COVID-19 Modified Operations Website. Since then, as the worldwide crisis has evolved, the Bureau of Prisons has repeatedly revised its plan. *Wilson*, 2020 WL 3056217, at *2. To stop the spread of the disease, the Bureau of Prisons has restricted inmate movement within and between facilities. *Id.* When new inmates arrive, asymptomatic inmates are placed in quarantine for a minimum of 14 days. *Id.* Symptomatic inmates are provided with medical evaluation and treatment and are isolated from other

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 17

inmates until testing negative for COVID-19 or being cleared by medical staff under the CDC's criteria. *Id.*

Within its facilities, the Bureau of Prisons has "modified operations to maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing quarantine and isolation procedures." *Id.* Staff and inmates are issued face masks to wear in public areas. *See* BOP FAQs: Correcting Myths and Misinformation. Staff and contractors are screened for symptoms, and contractors are only permitted to access a facility at all if performing essential service. *Wilson*, 2020 WL 3056217, at *2. Social and legal visits have been suspended to limit the number of people entering the facility and interacting with inmates. *Id.* But to ensure that relationships and communication are maintained throughout this disruption, the Bureau of Prisons has increased inmates' telephone allowance to 500 minutes per month. Legal visits are permitted on a case-by-case basis after the attorney has been screened for infection.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from COVID-19 completely, despite its best efforts. FCI Elkton, where Dean is currently incarcerated, has been one of the BOP facilities most affected by COVID-19. In response, Elkton has adopted even more stringent measures to mitigate the virus. *See Wilson, et.al. v. Williams*, 20-cv-794 (N.D. Ohio). With regard to Dean, those measures apparently have been successful

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 18

as he was tested for the virus with negative results, and his medical records suggest that to the extent that he had any COVID-like symptoms, Dean has recovered. (Exhibit 3). The Bureau of Prisons' measures will help federal inmates remain protected from COVID-19 and ensure that they receive any required medical care during these difficult times.

  B.  The Bureau of Prisons is increasing the number of inmates who are granted home confinement.

  The Bureau of Prisons has also responded to COVID-19 by increasing the placement of federal prisoners in home confinement. Recent legislation now temporarily permits the Bureau of Prisons to "lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement" during the COVID-19 pandemic. Coronavirus Aid, Relief, and Economic Security Act (CARES Act) § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020). The Attorney General has also issued two directives, ordering the Bureau of Prisons to use the "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." (03-26-2020 Directive to BOP, at 1; *accord* 04-03-2020 Directive to BOP, at 1). The directives require the Bureau of Prisons to identify the inmates most at risk from COVID-19 and "to consider the totality of circumstances for each individual inmate" in deciding whether home confinement is appropriate. (03-26-2020 Directive to BOP, at 1).

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 19

The Bureau of Prisons' efforts on this point are not hypothetical. Over 6,800 federal inmates have been granted home confinement since the COVID-19 pandemic began, and that number continues to grow. BOP Coronavirus FAQs. As the Sixth Circuit recently stressed, these efforts show that "[t]he system is working as it should": "A policy problem appeared, and policy solutions emerged." *Alam*, 2020 WL 2845694, at *5.

This policy solution is also tailored to the realities of the COVID-19 pandemic. As the Attorney General's directives have explained, the Bureau of Prisons is basing its home-confinement decisions on several factors:

1.) Each inmate's age and vulnerability to COVID-19;

2.) Whether home confinement would increase or decrease the inmate's risk of contracting COVID-19; and

3.) Whether the inmate's release into home confinement would risk public safety.

(03-26-2020 Directive to BOP; 04-03-2020 Directive to BOP). These criteria account for justifiable concerns about whether inmates "might have no safe place to go upon release and [might] return to their criminal activities," as well as "legitimate concerns about public safety." *Wilson*, 2020 WL 3056217, at *11.

The Bureau of Prisons, after all, cannot open its facilities' gates indiscriminately and unleash tens of thousands of convicted criminals, en masse.

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 20

*See id.* It must focus on the inmates who have the highest risk factors for COVID-19 and are least likely to engage in new criminal activity.

The Bureau of Prisons' home-confinement initiative allows it to marshal and prioritize its limited resources for the inmates and circumstances that are most urgent. For any inmate who is a candidate for home confinement, the Bureau of Prisons must first ensure that his proposed home-confinement location is suitable for release, does not place him at an even greater risk of contracting COVID-19, and does not place members of the public at risk from him. It must assess components of the release plan, including whether the inmate will have access to health care and other resources. It must consider myriad other factors, including the limited availability of transportation right now and the probation department's reduced ability to supervise inmates who have been released. All of those decisions require channeling resources to the inmates who are the best candidates for release. Those types of system-wide resource-allocation decisions are difficult even in normal circumstances. That is why Congress tasked the Bureau of Prisons to make them and has not subjected the decisions to judicial review. 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."); *United States v. Patino*, No. 18- 20451, 2020 WL 1676766, at *6 (E.D. Mich. Apr. 6, 2020) ("[A]s a general rule, the Court lacks authority to direct the operations of the

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 21

Bureau of Prisons."). It is especially true now, given the Bureau of Prisons'

substantial and ongoing efforts to address the COVID-19 pandemic.

**III.     If the Court were to grant Dean's motion, it should order a 14-day quarantine before release.**

If the Court were inclined to grant Dean's motion despite the government's

arguments above, the Court should order that he be subjected to a 14-day

quarantine before release.

### Conclusion

Dean's motion should be denied.


Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney


Dated: <u>July 16, 2020</u>              <u>s/ *A. Tare Wigod*</u>
                                    Assistant United States Attorney
                                    211 W. Fort Street, Suite 2001
                                    Detroit, Michigan 48226
                                    Phone: (313) 226-9191
                                    tare.wigod@usdoj.gov
                                    P58479

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 22

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on July 16, 2020, the foregoing document was electronically filed, by an employee of the United States Attorney's Office, with the Clerk of the Court using the ECF system, and I hereby certify that an employee of the United States Attorney's Office mailed by United States Postal Service the document to the following non-ECF participants:

> Jeremy William Dean, No. 85347-079
> FCI Elkton
> Federal Correctional Institution
> P.O. Box 10
> Lisbon, OH  44432

> *s/ A. TARE WIGOD*
> Assistant United States Attorney
> 211 W. Fort Street, Suite 2001
> Detroit, Michigan 48226
> Phone:  (313) 226-9191
> tare.wigod@usdoj.gov
> P58479

*United States v. Jeremy Dean*, 11-cr-20195
Government's Response to Defendant's
Motion for Compassionate Release
Pg. 23