UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 11-20195 |
| Plaintiff, | Hon. Linda V. Parker |
| -vs- | |
| JEREMY WILLIAM DEAN, | |
| Defendant. | |
| _____/ | |

**DEFENDANT'S REPLY TO
UNITED STATES' RESPONSE OPPOSING
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

## Introduction

Defendant, Jeremy Dean, is nearing the end of a lengthy sentence for possession with intent to distribute marijuana. He is incarcerated at FCI Elkton, which has had, and continues to have, serious and well-documented problems with the COVID-19 pandemic. At Elkton, Mr. Dean has completed most of the Residential Drug Abuse Program (RDAP) and would be due to be released soon to a halfway house but for the pandemic.[1] Defendant has filed a *pro se* motion for compassionate release; the Court has ordered counsel for the Government to file a

---

[1] See Defendant's Exhibit G (Sentence Monitoring Computation Data as of 7/8/20), p. 2 (listing date of 8/10/20 for completion of residential portion of RDAP program).

response (which was filed on July 16, 2020) and permitted counsel for Defendant to file the instant Reply by July 21, 2020.

Under the statute providing for motions for compassionate release, 18 U.S.C. §3582(c)(1), Defendant has (1) exhausted his administrative remedies within the Bureau of Prisons (BOP), notwithstanding the Government's position to the contrary; and (2) demonstrated, after consideration of the policy statement in U.S.S.G. §1B1.13 and the sentencing factors in 18 U.S.G. §3553(a), extraordinary and compelling reasons warranting a sentence reduction to time served.

## Administrative Exhaustion

There is no dispute that an incarcerated defendant must exhaust his administrative remedies before going to court to seek compassionate release. *See United States v Alam*, 960 F.3d 831 (6th Cir. 2020). There is also no dispute in this case that Defendant sought administrative relief in writing and received a denial, also in writing. See Exhibit A (Defendant's administrative request for compassionate release) and Exhibit B (Elkton warden's denial of Defendant's request). Here, the parties disagree on what constitutes "exhaustion" under the compassionate release statute.

The Government argues that "issue exhaustion" is required, citing an unpublished Eastern District of Michigan case, *United States v Asmar*, No. 18-20668, 2020 WL 3163056 (E.D. Mich. June 5, 2020), and unpublished cases out of

Nevada, California, and New York. See Government's Reply at pp. 6 – 9. The Government appears to be arguing that, even though Defendant based his administrative request on the pandemic, he still failed to exhaust because he did not mention "sleep apnea."

Simply put, it is Defendant's position that the Government is wrong. A better reasoned decision is *United States v Curtis Lee Williams*, No. 15-20462, 2020 WL 4040706 (E.D. Mich. July 17, 2020) (Lawson, J.). As stated in *Williams*:

> [F]ederal courts confronted with the argument now raised by the government generally have been skeptical of the notion that the statute imposes any requirement of "issue exhaustion" on requests for compassionate release, or that a prisoner explicitly must mention the pandemic as a basis of his administrative request, or else submit and exhaust a fresh request on that ground -- and wait yet another 30 days -- before seeking judicial review.
>
> \* \* \*
>
> Here, the statutory ground for the request has not changed from when it first was submitted; the defendant seeks now, as he did at the administrative level, release based on "extraordinary and compelling circumstances," under the authority of 18 U.S.C. §3582(c)(1)(A)(i). He described several circumstances in his administrative petition that he felt were extraordinary and compelling. He now advances others, which have arisen since the request first was tendered. But the underlying authority and ground for the relief sought has not changed, and it would be inappropriate under the circumstances to impose any further exhaustion requirement, *which in any event is not mandated in any plain terms of the statute*.

*Williams*, No. 15-20462, at *4-5, (citations omitted) (emphasis added). *See also Miller v United States*, No. 16-20222, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. April 15, 2020); *United States v Dillard*, No. 1:15-CR-00170-SAB, 2020 WL 2564638, at *2 (D. Idaho Mar. 27, 2020) ("The statute does not require issue exhaustion as argued by the United States [.]").

Here, Defendant made a detailed, written request to the warden for compassionate release based on the pandemic and indicated that he would go to court under 18 U.S.C. §3582(c)(1)(A) if he were denied (Defendant's Exhibit A). Having been denied in writing (Defendant's Exhibit B), he has filed his motion in court, and here we are. Defendant has exhausted his administrative remedies.

### **Extraordinary and Compelling Reasons**

The compassionate release statute does require a showing of "extraordinary and compelling reasons" for reduction or release, which includes serious medical conditions but does not require them. *See* U.S.S.G. §1B1.13, Application Note 1 (including, in subsection (D), "other reasons").

In any event, Defendant has alleged that he has sleep apnea, which is referred to in his medical records as "obstructive sleep apnea." See

4

Defendant's Exhibit C (medical record dated 2/28/20), p. 2.[2]  But the important point is that Mr. Dean has sleep apnea *while incarcerated at FCI Elkton in a pandemic*.  This Court is well aware of the problems with COVID-19 at Elkton.  Even now, in late July 2020, there are 316 inmates and 2 staff positive for COVID-19 (with 678 "inmates recovered" and 51 "staff recovered") (*www.bop.gov/coronavirus*) (last visited 7/21/20).  *See Wilson v Williams*, 961 F.3d 829 (6th Cir. 2020) (vacating preliminary injunction that had been issued regarding subclass of Elkton prisoners particularly vulnerable to medical complications during the COVID-19 pandemic).

Significantly, Mr. Dean himself was determined to be a potential member of this "particularly vulnerable" subclass during the *Wilson* litigation. See Defendant's Exhibit D (pleading from district court litigation in *Wilson v Williams*, N.D. Ohio No. 4: 20cv794, ECF No. 35 - with list of Elkton inmates attached; Defendant, along with his prisoner number and his federal case number, is listed on the final page of the exhibit, the 14th name from the bottom of the page [PageID #535]).

---

[2] This condition has been defined as "a potentially serious sleep disorder" which "causes breathing to repeatedly stop and start during sleep." (*www.mayoclinic.org/diseases-conditions/obstructive-sleep-apnea/symptoms-causes/syc-20352090*)

Although written in dissent in *Wilson*, Chief Judge Cole's words are pertinent to Defendant's situation at Elkton:

> [P]risoners have been placed in a deadly predicament: prevented by the fact of their confinement from taking recommended precautions, they are left exceptionally exposed to a deadly virus. This reality is particularly concerning for medically vulnerable inmates like those in the subclass.
>
> This predicament has already had deadly consequences at Elkton, which has become an epicenter of the pandemic within the federal prison system. There, groups of roughly 150 inmates continue to be housed together in close quarters. Perhaps predictably, the virus had spread rapidly among inmates and staff alike at the prison by the time the district court issued its preliminary injunction on April 22, 2020. By that time, six inmates at the prison had already died, and more clung to life only with the aid of ventilators, all while the BOP failed to take action to allow the 837 medically vulnerable inmates in its charge at Elkton to follow public health guidelines by maintaining an appropriate distance between themselves and their fellow inmates. This failure left these inmates in a perilous situation, which the district court sought to address through the preliminary injunction before us today. Upon review of the record, I conclude that the district court did not abuse its discretion in granting the preliminary injunction. I therefore respectfully dissent from the majority's opinion finding that it did so.

*Wilson, supra*, 961 F.3d at 845-46 (Cole, C.J., dissenting).

## **Alleged Danger to Community**

U.S.S.G. §1B1.13 also advises that a defendant seeking compassionate release not be a danger to the community. The Government in its response strains to make Jeremy Dean out to be dangerous. Government's Response, pp. 13-14. Defendant may have qualified as a "career offender," but the current conviction, as well as both predicate offenses, were for selling marijuana. Indeed, an examination of his criminal history, while lengthy, is notable for its *lack* of violent offenses. See PSR ¶¶ 28-38 and Government's Response, p. 16.

## **18 U.S.C. §3553(a) Factors**

The final points to be considered for compassionate release are the sentencing factors set forth in 18 U.S.C. §3553(a). These factors largely weigh in Defendant's favor.

Under §3553(a)(1), the nature and circumstances of the offense were unremarkable and did not involve any confrontation with the police. See PSR ¶¶ 9-12. Defendant's family history is fairly standard (PSR ¶¶ 49-52), but his current family support is extraordinary. Counsel has attached a series of letters as Exhibit E, which collectively present a solid release plan, including places to live and work. Mr. Dean's letter (first one in Exhibit E) is heartfelt and self-reflective; this is a person who appears to have learned

from a nine-year stint in prison. The other letters observe the positive changes in Mr. Dean but share his frustration; he has dutifully followed the RDAP program, only to see an early release put on "pause" (perhaps permanently). Between his two brothers and even a close friend, he has places to stay and work, which would go a long way toward a smooth transition upon release. In short, Mr. Dean's support system is about as good as it gets.

In addition, Defendant has made effective use of his time while incarcerated. Attached collectively as Exhibit F are the following: (1) Individualized Reentry Plan (showing 17 education courses taken over the years, a lack of discipline reports, and other positive steps), (2) Custody Classification Form (showing Defendant scoring at the "minimum" custody level), (3) drug education program certificate (2012), (4) non-residential drug program certificate (2016), and (5) Recidivism Reduction Program certificate.

The Government tries to make much of the "aims of sentencing such as promoting respect for the law, providing just punishment, affording adequate deterrence, and most importantly protection of the community." Response at p. 16. But these "aims" have already been achieved by a severe sentence of *over 12 and a half years (151 months)*. And the Government ignores §3553(a)(2)(D) (providing effective correctional treatment), which seems

8

virtually impossible in 2020 Elkton for vulnerable prisoners like Mr. Dean. The Government also ignores §3553(a)(7) (need to avoid unwarranted sentence disparities among similarly situated defendants). *See United States v Jelinek*, No. 15-20312, 2020 WL 3833125 (E.D. Mich. July 8, 2020). Indeed, there is a significant risk that Defendant's out-date (currently listed as 4/2/21) could be moved forward a full year (to 4/2/22) if he is unable, through no fault of his own, to complete all phases of RDAP. See Exhibit G (sentence computation data sheet), p. 2. It seems fair to say that denying Jeremy Dean his well-earned RDAP reduction and keeping him in COVID-infested Elkton is the definition of unwarranted disparate treatment.

Finally, with respect to the Government's emphasis on the BOP's efforts toward making more use of home confinement (Government's Response at pp. 17-22), this Court can directly accomplish this by reducing Defendant's sentence to time served and imposing mandatory home confinement for the first period of his supervised release.

9

## Conclusion

Therefore, Defendant requests that this Court grant compassionate release and reduce his sentence to time served, with home confinement as part of supervised release. As a first alternative, Defendant requests that this Court reduce his custody sentence by one year in order to ensure credit for his participation in the RDAP program. Finally, as a second alternative, this Court could issue a letter to the BOP recommending that Defendant be released to home confinement.

Respectfully Submitted,

s/David A. Koelzer
Federal Community Defender
Eastern District of Michigan
Attorney for Defendant
111 E. Court St., Suite L-100
Flint, Michigan 48502
(810) 232-3600
david_koelzer@fd.org
(P41273)

Dated:   July 21, 2020

## CERTIFICATE OF SERVICE

On July 21, 2020, I filed the foregoing document using the ECF system, which will send notification of the filing to counsel of record.

s/David A. Koelzer