UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                        Criminal Case No. 11-20195
                                        Honorable Linda V. Parker

v.

JEREMY WILLIAM DEAN,

    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582

On December 14, 2011, Defendant pleaded guilty pursuant to a plea agreement to one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). On May 2, 2012, the Honorable Mark A. Goldsmith sentenced Defendant to 151 months of incarceration, and a Judgment was entered on May 4, 2012. (ECF No. 30.) The matter is currently before this Court on Defendant's request for compassionate release pursuant to 18 U.S.C. § 3582. (ECF No. 49.) The Government opposes Defendant's request. (ECF No. 55.)

### Applicable Law

Under § 3582, a court may reduce a defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant

such a reduction . . . and that a reduction is consistent with applicable statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of proving that "extraordinary and compelling reasons" exist to justify release under the statute. *See United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990) (concluding that the burden of proving facts that could decrease a potential sentence fall upon the defendant); *see also United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."). Here, Defendant seeks compassionate release in light of the novel coronavirus (COVID-19), along with his age (48 years old) and medical condition (obstructive sleep apnea) which he contends increase his risk of serious outcomes if he contracts the virus.

    A defendant may move for compassionate release under § 3582(c)(1)(A) only after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). This exhaustion requirement is mandatory. *United States v. Alam*, 960 F.3d 831, 832, 834 (6th Cir. 2020). Although recognizing the need for a prompt resolution of a prisoner's request for release during this pandemic, the *Alam* court concluded that the exhaustion requirement must be followed and is not subject to "equitable carveouts," reasoning:

> Speed matters, yes. But accuracy matters too. Preventing prisoners from charging straight to federal court serves important purposes. It ensures that the prison administrators can prioritize the most urgent claims. And it ensures that they can investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist. These are not interests we should lightly dismiss or re-prioritize.

*Id.* at 835.

A number of district courts have concluded that the exhaustion requirement is not satisfied where prisoners assert different factual basis for relief in their administrative requests and the motions filed before the court, reasoning that this "does not give the [Bureau of Prisons] an opportunity to act on the request before [seeking relief from] the courts." *United States v. Asmar*, -- F. Supp. 3d --, 2020 WL 3163056, at *3 (E.D. Mich. June 5, 2020) (citing *United States v. Mogavero*, No. 15-00074, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020)); *see also United States v. Hernandez*, No. 13-CR-4467, 2020 WL 3051105, at *4 (S.D. Cal. June 5, 2020) (finding that to satisfy the exhaustion requirement, "the administrative request must raise the same basis for relief as the federal court filing."); *see also United States v. Valenta*, No. 15-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020) (concluding that in order "to give the BOP an opportunity to address the issue . . . the administrative complaint must raise the same claims asserted in the federal court filing."). On the other hand, some district courts "have been skeptical of the notion that the statute imposes any requirement of 'issue exhaustion' on

requests for compassionate release ….." *United States v. Williams*, No. 15-20462, 2020 WL 4040706, at *2 (E.D. Mich. July 17, 2020) (citing *United States v. Garner*, No. 14-13, 2020 WL 3632482, at *3 & n.2 (S.D. Tex. July 3, 2020)); *see also United States v. Hamrick*, No. 1:19-CR-91, 2020 WL 4016037, at *3 (M.D. N.C. July 16, 2020) (because compassionate release requests to the warden "are almost always" made on a pro se basis "courts will usually read such requests to the warden liberally, but not so broadly as to make the exhaustion requirement meaningless.")  As one district court recently concluded: "The exhaustion requirement should not be applied hyper-technically, and the request to the warden need not be identical in detail or specificity to the motion made in court." *United States v. Knight*, No. 1:15-CR-393, 2020 WL 4059886, at *2 (M.D. N.C. July 20, 2020).

## Analysis

### Exhaustion

There is no dispute that Defendant submitted a request for release to his warden at least thirty days before filing the pending motion, which the warden denied.  (*See* ECF Nos. 55-2, 55-3.)  Nevertheless, the Government maintains that Defendant has not satisfied the mandatory exhaustion requirement because his request to the warden and pending motion do not assert the same factual basis for release.  In his letter to the warden, Defendant referred to COVID-19 and only his

4

"extreme risk for contraction and exposure to the [virus]." (ECF No. 55-2.) He did not mention his age or any medical condition.

Nevertheless, Defendant's request to the warden and his pending motion are both based on the "[e]xtraordinary and [c]ompelling circumstances" caused by the "COVID-19 Pandemic." (ECF No. 55-2.) And while Defendant did not specify to the warden why he was at "extreme risk" if he contracted the virus, it can be presumed that the BOP was well-aware of Defendant's medical condition(s) when his request was denied. In fact, prison medical records dated February 28, 2020 reflect that Defendant has "obstructive sleep apnea." (ECF No. 57-4 at Pg ID 240.) The BOP is well aware of Defendant's age. As the Sixth Circuit's decision in *Alam* reflects, prison administrators are expected to investigate a prisoner's conditions when presented with a request for release.

For these reasons, the Court finds that Defendant's pro se administrative request, when read liberally, provided sufficient information to alert the warden of the factual basis on which he now seeks relief. The Court therefore concludes that Defendant exhausted his administrative remedies.

## Extraordinary and Compelling Circumstances

The Court finds that, in combination, Defendant's age, medical condition, and the conditions at his place of confinement due to COVID-19 present extraordinary and compelling circumstances warranting a sentence reduction.

5

Contrary to the Government's position, his release does not pose a sufficiently serious danger to the community to prohibit his release.

It is widely acknowledged, based on expert guidance, that there is a greater risk of COVID-19 infection for incarcerated individuals. Moreover, the risk of experiencing serious outcomes if one is infected increases with age and underlying health conditions. Notably, medical experts are continuously gaining insight as to how this new virus affects individuals with particular medical conditions and the list of underlying conditions exposing individuals to the risk of more serious outcomes is evolving. At this point, however, there is no vaccine and the virus can cause severe complications or death. No one can seriously deny that the COVID-19 pandemic is extraordinary and unprecedented in modern times and that it poses a danger to everyone.

Moreover, COVID-19 is more easily transmitted within communal living and densely packed environments, such as prisons. This has been demonstrated at the Elkton facility, where Defendant is incarcerated, which has become a hotbed for COVID-19. As of April 22, 2020, 59 inmates and 46 staff members at the facility had tested positive for the virus, and there were six COVID-19 related deaths. *See Wilson v. Williams*, 961 F.3d 829, 834 (6th Cir. 2020). As of July 22, 994 inmates and 53 staff members have tested positive and nine inmates have died. *See* https://www.bop.gov/coronavirus/. The BOP's failure to implement any comprehensive prophylactic testing program calls into question whether these

6

figures grossly under count the rates of infection within the facility. *See Wilson*, 961 F.3d at 849 ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring).

Defendant "is not a danger to the safety of any other person or to the community" as required for compassionate release. *See* 28 U.S.C. § 3582(c)(1)(A) (providing that a reduction in sentence must be "consistent with applicable policy statements issued by the Sentencing Commission"); U.S.S.G. § 1B1.13. Defendant is a repeat offender, but his current conviction and predicate offenses were for selling marijuana. None of his prior offenses involved crimes of violence and many relate to his marijuana and alcohol abuse. (*See* ECF No. 55 at Pg ID 211.) Further, except for Defendant's current charge and an "accosting and soliciting" conviction in 2008, his remaining prior convictions arose from conduct in the 90's.

Yet, the Government argues that Defendant is a danger to the community, quoting the Sixth Circuit's statement in *United States v. Stone*, 608 F.3d 939 (6th Cir. 2010), that it "routinely affirms, on dangerousness grounds, the pretrial detention of run-of-the mill drug dealers, even without any indication that the

7

defendant has engaged in violence." (ECF No. 55 at Pg ID 209 (quoting *Stone*, 608 F.3d at 947 n.6).) For the same proposition, the Government cites *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020), which quotes *Stone*. But the circumstances of those cases suggest that the quoted language is stated in terms that are far too general and that the Government should use more care when citing them.

*Stone* involved a defendant who was a member of a group that had acquired a significant arsenal of weapons, trained as a paramilitary organization, and contemplated murdering civilians and law enforcement officers. 608 F.3d at 944. He was charged with, among other violations, seditious conspiracy, attempted use of weapons of mass destruction, and carrying and using firearms during and in relation to crimes of violence. *Id*. The defendant in *Knight* had pleaded guilty to conspiracy to distribute controlled substances and possessing a firearm as a convicted felon. 2020 WL 3055987, at *1. The conspiracy involved a "pill mill" scheme where 125,000 dosage units of medically unnecessary oxycodone were distributed to patients in exchange for cash. *Id*. The firearm conviction involved an AK-47. *Id*. In stark contrast here, Defendant's current and prior convictions involve marijuana and do not reflect the use of any weapon or violence.

During his more than eight years of incarceration, Defendant has completed several programs to address his drug and alcohol abuse and has made good progress in other programming preparing him for release. (*See* ECF No. 57-7.) He

8

has no incident reports for at least the past six months. (*Id*.) He has served almost 75% of his sentence and is eligible for home detention in a few months. (*Id*. at 57-8.) His projected release date is April 2, 2021. (*Id*.) Defendant has significant support from family and friends, who are willing to house and employ him upon his release. (ECF No. 57-6.)

Thus, the Court finds that extraordinary and compelling circumstances and the factors set forth in 18 U.S.C. § 3553(a) warrant a reduction of Defendant's sentence.

## Conclusion

For the foregoing reasons, the Court is **GRANTING** Defendant's request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Court reduces Defendant's sentence to time served. The Bureau of Prisons is authorized to delay execution of this Order for up to seven days after its issuance to make necessary arrangements related to Defendant's release. Nevertheless, the Bureau of Prisons is directed to proceed as expeditiously as possible to avoid any unnecessary delay. The Court leaves undisturbed the three-year period of supervised release and all special conditions that were imposed in the May 4, 2012, Judgment.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
Dated: July 24, 2020        U.S. DISTRICT JUDGE